

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**01/06/2011**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TROY EDWARD THEISS AND | § | |
| LINDA DARLENE THEISS | § | |
| DEBTOR(S) | § | CASE NO.    08-35229-H5-7 |
| | § | |
| CANNON CUSTOM HOMES, INC. | § | |
| PLAINTIFF(S) | § | ADVERSARY NO. 08-3460 |
| | § | |
| VS. | § | |
| | § | |
| TROY EDWARD THEISS AND | § | |
| LINDA DARLENE THEISS | § | |
| DEFENDANT(S) | § | |
| | § | |

## MEMORANDUM OPINION

Before the Court is the complaint of Cannon Custom Homes, Inc. seeking a determination of the dischargeability of its debt under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157. This is a core proceeding. After trial, the Court finds that Cannon has failed in its burden to prove its allegations and takes nothing.

## I. BACKGROUND

Mr. Theiss is a plumber. Theiss did business as Heritage Plumbing Company from 2000 to April 2007, when he incorporated the company as Heritage Plumbing LLC. Mrs. Theiss paid the company bills and kept the company books on a software program named

"Quickbooks." The Theiss' accountant prepared tax returns for debtors and the company. Mrs. Theiss earns about $300 to $600 monthly serving as a director on a water board and additional income for obtaining customers for an electrical service.

During 2008, the debtors liquidated much of their personal property and received a total of $58,783.07. The Theisses liquidated Mr. Theiss' SEP retirement plan for $37,800.23, a whole life insurance policy for $12,000.00, and Mrs. Theiss' shares of stock in UGI Corporation, for $2,782.84. Theiss sold a trencher and trailer for $3,700.00, and Mr. Theiss' oldest truck, a 2002 Ford F150, for $2,500. Debtors' records, which include their tax returns, bank statements, sales receipts, the corporate general ledger, balance sheets, profit & loss statements and other "Quickbooks" records of Heritage Plumbing LLC, records of Mrs. Theiss' stock sale, records of the sales of a trencher and trailer and other personal property, and gambling records, show that debtors sold their personal property to unrelated third parties, not to friends or relatives. There is no evidence that the consideration paid for any item was inadequate or was for an amount less than the fair market value of the items sold.

Debtors used some of the proceeds from liquidating their personal property to gamble. According to debtors' schedules and statement of affairs, during 2008, debtors experienced gambling losses of $39,200.00 and gambling winnings of $15,503.00.

Heritage Plumbing LLC operated as an independent contractor installing plumbing in residential construction projects for various home builders including Cannon Custom

Homes, Inc.[1]  Heritage completed its work properly for Cannon and Cannon paid most of Heritage's invoices.

In 2008, housing starts declined severely, fewer contractors were building new homes, and Heritage Plumbing LLC was unable to get as many plumbing jobs as it had previously. The books and records of Heritage Plumbing LLC show that during 2008, it received about one-half of its income from Cannon and the rest from other builders. On August 7, 2008, the Thiesses filed a chapter 7 bankruptcy petition.

At the time debtors filed bankruptcy, the company books show that Heritage Plumbing LLC owed several plumbing suppliers including Ferguson for unpaid supplies.  Prior to debtors' filing, on July 15, 2008, Ferguson Enterprises, Inc. notified Cannon that it was unpaid for materials it valued in excess of $48,000, furnished to Heritage for seven residential construction projects in Spring, Texas.[2]  Ferguson sought payment for items it describes by the following abbreviations: "WCL," "PIB," "Troy,"  "plumbing," "replacement," and "serv chge." Of  Ferguson's total items claimed, only a few items, totaling $2,692 in value, are described as  "faucet," "body sprayer," "sink," and "drains." Neither Cannon's personnel, nor Theiss attempted to identify the items listed by Ferguson

---

[1]On June 25, 2008, on behalf of Heritage Plumbing LLC, Theiss executed a written Independent Contractor Agreement with Cannon Custom Homes, Inc. that sets forth the relationship between the two companies.

[2]The residential construction projects are located at 38 Post Shadow Estate, 16114 Salmon Lane, 15 Post Shadow Estate, 8103 Marshall Falls Drive, 25050 Bow Wood Court, 14715 Thorton Knolls Drive, and 25210 Arcane Court.

as the specific fixtures actually installed at the seven residential construction projects.[3]

Although Heritage's invoices to Cannon do not consistently separate labor charges from fixture charges, it appears that Heritage invoiced and Cannon paid a total of $41,856.76 for fixtures installed in the residential construction projects listed in Ferguson's claim.[4] Cannon admits that it paid Heritage only a total of $44,309.74 for all supplies furnished by Ferguson. Cannon further admits that it still owes Heritage for "recent invoices totaling $4,419.45."[5] These judicial admissions are conclusively binding statements of fact. Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University, 579 F.3d 546, 550 (5th Cir. 2009) ("Factual assertions in the complaint are 'judicial admissions conclusively binding' on the plaintiff.)

On December 1, 2008, Cannon filed the instant adversary proceeding seeking reimbursement from debtors for the amount of Ferguson's claim anticipating that it might be

---

[3]When asked whether he had attempted to trace Ferguson's supplies as identified in its letters, Theiss testified that he could not do so. Cannon's office manager testified that she believed Ferguson's letters because she had called Ferguson's credit manager and he had shown her proof that Heritage had signed for most of the materials. Theiss testified, however, that since Heritage Plumbing LLC was installing plumbing for several builders, any fixtures acquired from Ferguson could have been for other jobs.

[4]Of the seven residential construction projects included in Ferguson's notice letters, Heritage's invoices and other records show that Heritage billed Cannon and Cannon paid Heritage for plumbing fixtures at only five of those seven projects. The evidence shows that Ferguson claims it was unpaid for supplies for 14715 Thorton Knolls, however, Heritage never invoiced Cannon for any work at that address. Next, Ferguson claims it was not paid for items supplied to Marshall Falls Drive, but Heritage's invoices do not reflect any charges for fixtures at that address.

[5]Cannon Complaint, adversary proceeding no. 08-03460, docket entry # 1, para.7.

subject to double liability. On May 15, 2009, Ferguson sued Cannon under the theory of quantum meruit alleging that Heritage failed to pay for materials sold to improve seven residential construction projects.  At some point, Cannon paid Ferguson $35,000 to settle Ferguson's claim.

## II.  CANNON'S CONTENTIONS

Cannon alleges that debtors: (1) violated the Texas Construction Trust Fund Act, Texas Property Code § 162.001, et seq.[6]  Specifically, Cannon alleges that debtors: (1)

---

[6]

The Texas Construction Trust Fund Act states:

§ 162.001. Construction Payments and Loan Receipts as Trust Funds

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

(b) Loan receipts are trust funds under this chapter if the funds are borrowed by a contractor, subcontractor, or owner or by an officer, director, or agent of a contractor, subcontractor, or owner for the purpose of improving specific real property in this state, and the loan is secured in whole or in part by a lien on the property.

(c) A fee payable to a contractor is not considered trust funds if:

(1) the contractor and property owner have entered into a written construction contract for the improvement of specific real property in this state before the commencement of construction of the improvement and the contract provides for the payment by the owner of the costs of construction and a reasonable fee specified in the contract payable to the contractor; and

(2) the fee is earned as provided by the contract and paid to the contractor or disbursed from a construction account described by Section 162.006, if applicable .

(d) Trust funds paid to a creditor under this chapter are not property or an interest in property of a debtor who is a trustee described by Section 162.002.

§ 162.002. Contractors as Trustees

A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds.

§ 162.003. Beneficiaries of Trust Funds

(a) An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

(b) A property owner is a beneficiary of trust funds described by Section 162.001 in connection with a residential construction contract, including funds deposited into a construction account described by Section 162.006.

§ 162.004. Application

(a) This chapter does not apply to:

(1) a bank, savings and loan, or other lender;

(2) a title company or other closing agent; or

(3) a corporate surety who issues a payment bond covering the contract for the construction or repair of the improvement.

(b) The Texas Trust Act (Chapters 111 through 115) does not apply to any trust created under this chapter, nor does this chapter affect any provision of the Texas Trust Act.

(c) Regardless of whether a construction contract is covered by a statutory or common law payment bond, this chapter applies to a public or private construction contract for the improvement of specific real property in this state.

§ 162.005. Definitions

In this chapter:

(1) A trustee acts with "intent to defraud" when the trustee:

(A) retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds;

(B) retains, uses, disburses, or diverts trust funds and fails to establish or maintain a construction account as required by Section 162.006 or fails to establish or maintain an account record for the construction account as required by Section 162.007; or

(C) uses, disburses, or diverts trust funds that were paid to the trustee in reliance on an affidavit furnished by the trustee under Section 53.085 if the affidavit contains false information relating to the trustee's payment of current or past due obligations.

(2) "Current or past due obligations" are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds.

(3) "Direct cost" means a cost included under a construction contract that is specific to the construction of the improvement that is the subject of the contract.

(4) "Indirect cost" means a cost included under a construction contract that is not specific to the construction of the improvement that is the subject of the contract.

(5) "Financial institution" means a bank, savings association, savings bank, credit union, or savings and loan association authorized to do business in the state.

(6) "Construction account" means an account in a financial institution into which only trust funds and funds deposited by the contractor that are necessary to pay charges imposed on the account by the financial institution may be maintained.

§ 162.006. Construction Account Required in Certain Circumstances

(a) A contractor who enters into a written contract with a property owner to construct improvements to a residential homestead for an amount exceeding $5,000 shall deposit the trust funds in a construction account in a financial institution.

(b) The periodic statement received from the financial institution must refer to the account as a "construction account" to satisfy the requirements of this section.

§ 162.007. Management of Construction Accounts

(a) A contractor required to maintain a construction account under this subchapter shall maintain an ac information relating to:

(1) the source and amount of the funds in the account and the date the funds were deposited;

(2) the date and amount of each disbursement from the account and the person to whom the funds were disbursed; and

(3) the current balance of the account.

(b) The contractor shall maintain an account record for each construction project that specifies the direct costs and indirect costs charged to the owner.

(c) The contractor shall retain all invoices and other supporting documentation received relating to funds that were disbursed from the construction account.

(d) The contractor shall ensure that all deposit and disbursement documentation includes the construction account number or information that provides a direct connection between the documentation and the account.

(e) The contractor may not destroy information required to be maintained under this section before the first anniversary of the date the improvement that is the subject of the contract is completed.

§ 162.031. Misapplication of Trust Funds

(a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

(b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

violated Tex. Prop. Code Chapter 162 by (a) retaining or diverting trust funds with the intent

to deprive the beneficiaries or (b) by retaining or diverting trust funds and failing to maintain

a construction account under Tex. Prop. Code § 162.005; (2) failing to pay suppliers, thereby

committing a defalcation in a fiduciary capacity; (3) invoicing Cannon for supplies and

thereby falsely representing that suppliers had been or would be paid on which Cannon

relied; (4) failing to pay suppliers with funds Cannon paid to debtors thereby committing

---

(c) It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal complaint or other notice of a pending criminal investigation.

(d) A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter.

§ 162.032. Penalties

(a) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter commits a Class A misdemeanor.

(b) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter, with intent to defraud, commits a felony of the third degree.

(c) A trustee who fails to establish or maintain a construction account in violation of Section 162.006 or fails to establish or maintain an account record for the construction account in violation of Section 162.007 commits a Class A misdemeanor.

§ 162.033. Election of Offenses

If the misapplication of trust funds by a trustee constitutes another offense punishable under the laws of this state, the state may elect the offense for which it will prosecute the trustee.

embezzlement, larceny, and willful and malicious injury to Cannon's property.  Cannon alleges that its claim is non-dischargeable under 11 U.S.C. § 523(a)(2)(fraud), (a)(4)(defalcation in a fiduciary duty, embezzlement, larceny) and (a)(6) (willful and malicious injury to property).

## III.  LIABILITY FOR DOUBLE PAYMENT UNDER THE TEXAS CONSTRUCTION TRUST FUND ACT

The Texas Construction Trust Fund Act protects general contractors from liability for double payment should a subcontractor fail to pay its materialmen.  Dealers Elec. Supply Co. v. Scroggins Const. Co., 292 S.W.3d 650 (Tex. 2009).  In Dealers Elec. Supply Co. v. Scroggins Const. Co., 292 S.W.3d 650 (Tex. 2009), the Texas Supreme Court held that to the extent that a general contractor pays trust funds to a subcontractor, the general contractor is protected under the Trust Fund Act from a later claim by the subcontractor's laborers or materialmen for unpaid labor or supplies.   Specifically, the Court held:

> . . . the Trust Fund Act provides an affirmative defense when the trust funds not paid to a laborer or materialman were used to pay the trustee's "actual expenses directly related to the construction or repair of the improvement." Tex. Prop.Code § 162.031(b). Such expenses included payments to subcontractors for costs actually and directly tied to the improvement. See Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc., 438 F.Supp.2d 696, 716 (E.D.Tex.2006) (citing Holladay v. CW & A, Inc., 60 S.W.3d 243, 248 (Tex.App.-Corpus Christi 2001, pet. denied); Op. Tex. Att'y Gen. No. JM-945 (1988)). Thus, as long as a prime contractor pays its subcontractor for the labor or materials supplied, and does not otherwise misapply trust funds, the prime contractor is-to the extent funds were paid to the subcontractor-protected under the Trust Fund Act from a later claim by the subcontractor's laborers or materialmen for unpaid labor or supplies. Accordingly, the risk of double liability for a prime contractor who pays subcontractors once the McGregor Act notice period has expired is

significantly diminished.

292 S.W.3d 650 at 659.  See also Taylor Pipeline Const., Inc. v. Directional Road, 438

F.Supp.2d 696 (E.D.Tex.2006.)  Cannon admits that it paid Heritage a total of $44,309.74

for all supplies furnished by Ferguson.  To the extent of this payment, Cannon was protected

from double liability to Ferguson for unpaid supplies.

## IV.  THE TEXAS CONSTRUCTION TRUST FUND ACT AND 11 U.S.C. § 523(a)(4) FOR FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY

Bankruptcy Code § 523(a)(4) provides:

> (a) A discharge under section 727. . . does not discharge an individual
> debtor from any debt--
> . . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity,
> embezzlement, or larceny . . .

11 U.S.C. § 523(a)(4).

In In re Nicholas, 956 F.2d 110 (5th Cir.1992), the Fifth Circuit considered whether

the Texas Construction Trust Fund Act, Texas Property Code § 162.001, et seq., as amended

in 1987, creates a fiduciary relationship that may give rise to a non-dischargeable claim under

11 U.S.C. § 523(a)(4) for fraud or defalcation in a fiduciary capacity. Writing for the Court,

Judge Edith Jones held:

> This court must decide whether the Texas Construction Trust Fund
> Statute, Tex. Property Code § 162.001 et seq. (Vernon Supp.1991) created a
> fiduciary duty between Nicholas and Coburn as subcontractor and, if so,
> whether Nicholas acted in fraud or defalcation of that duty. We conclude
> that because no fiduciary duty existed even under the 1987 amendments to
> the statute, § 523(a)(4) does not bar the dischargeability of Coburn's debt.
> Accordingly, we affirm.

. . . .

We agree that the Texas statute's amendments have expanded the realm of debts that are nondischargeable under the Bankruptcy Code.
But the statute ... falls far short of the statutes described in <u>Boyle</u> as creating classic, express trust arrangements.

. . . .

The amended statute criminalizes knowing or intentional as well as fraudulent misapplications of trust funds, subject to the three above-mentioned affirmative defenses. Relevant to this discussion, no criminal penalty attaches to the retention, use or disbursement of funds to pay the trustee's actual expenses directly related to the construction or repair of the improvement-whether or not such expenses were owed to "beneficiaries" of the trust fund. § 162.031. If, however, trust funds were knowingly or intentionally paid for more *than the actual expenses*, or for *expenses not "directly related"* to the construction or repair project, criminal sanctions could be imposed, and <u>Boyle</u> renders such actions subject to nondischargeability. § 523(a)(4).

The statute's affirmative defense for payment of "actual expenses directly related" to a construction or repair project differentiates it from the . . . statutes . . . which brook no payments to non-"beneficiaries." Texas Attorney General Opinion 1988, No. JM-945.

<u>In re Nicholas</u>, 956 F.2d 110, (5th Cir. 1992) (emphasis added); <u>see also</u> <u>In re Boyle</u>, 819 F.2d 583 (5th Cir.1987).

A trustee misapplies trust funds when he "directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds[.]" § 162.031. The Texas Construction Trust Fund Act defines "current or past due obligations" as "those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds[.]" § 162.005(2). Ruling for the debtor, the Fifth Circuit in <u>Nicholas</u> concluded that

to prove a debt under the Texas Construction Trust Fund Act as amended in 1987, is nondischargeable, a plaintiff must prove that the debtor "paid trust fund receipts to nonbeneficiaries for items other than 'actual expenses directly related' to the construction projects on which the unpaid beneficiary of the trust funds worked."

In re Nicholas, 956 F.2d 110 at 114.

## V.  WHETHER HERITAGE PAID TRUST FUNDS TO NONBENEFICIARIES FOR ITEMS OTHER THAN ACTUAL EXPENSES DIRECTLY RELATED TO THE CONSTRUCTION PROJECTS

Cannon intimates that debtors gambled with funds Cannon intended as payment for materials debtors purchased from Ferguson in violation of the Texas Construction Trust Fund Statute.  Nevertheless, the evidence shows and the Court finds that debtors gambled with personal funds obtained from liquidating property they owned individually, not property owned by the Heritage Plumbing LLC and not trust funds Cannon intended to be used to pay Ferguson. Cannon has failed to carry its burden to prove that Heritage improperly diverted trust funds for inappropriate expenditures.

Moreover, during 2008, Heritage Plumbing LLC paid actual expenses directly related to Cannon's residential construction projects in an amount in excess of the alleged trust funds at issue.  Heritage paid operational expenses for the business in the amount of $33,795 to subcontractors, $94,743 for job materials, and $23,750 to employees, among other business expenditures.  Of the $94,743, Heritage paid in 2008 for job materials, Heritage paid $45,000 to Ferguson. Thus, the evidence shows that Heritage paid to Ferguson all trust funds

it received from Cannon.  Further, the evidence shows that Ferguson was paid in full for all plumbing materials supplied for Cannon's projects.[7]

The Court finds that neither debtors, nor Heritage Plumbing LLC paid trust funds to nonbeneficiaries for items other than actual expenses directly related to the construction projects on which the unpaid beneficiary of the trust funds worked.  The Court concludes that Cannon has failed to prove a case under § 523(a)(4).

VI. FRAUD UNDER § 523(a)(2)

Bankruptcy Code § 523 provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt--
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a)(2).

Cannon contends that debtors committed fraud because Heritage's invoices to Cannon include charges for materials.  Cannon urges that by including charges for materials in its invoices, Heritage represented that it had paid or would pay for materials. Cannon urges that it relied on these representations and these representations were false.  Cannon contends that by such actions debtors violated 11 U.S.C. § 523(a)(2).

---

[7]The Theisses admit that Ferguson has not been paid in full for all plumbing supplies acquired by Heritage for non-Cannon projects.

For a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), the creditor must prove by a preponderance of the evidence that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. In re Mercer, 246 F.3d 391, 403 (5th Cir.2001).   The Court finds that to the extent that Heritage invoiced Cannon for materials from Ferguson and Cannon paid those invoices, Heritage paid those trust funds to Ferguson.  The Court finds that Heritage did not make any false representations in its invoices to Cannon.  The Court concludes that Cannon has failed to prove a case under 11 U.S.C. § 523(a)(2)(A).

## VII. EMBEZZLEMENT AND LARCENY UNDER § 523(a)(4)

Bankruptcy Code § 523 provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt--
> . . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

Cannon asserts that debtors failed to pay suppliers with funds Cannon paid to Heritage, and debtors thereby committed embezzlement and larceny.  Under Texas law, a person commits a theft if, without the owner's effective consent, he unlawfully appropriates property with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03(a) and (b) (Vernon Supp. 2009).  Where the debtor has come into possession of a creditor's

property lawfully, embezzlement, rather than larceny, is the § 523(a)(4) term that applies. Matter of Miller, 156 F.3d 598, 602 (5th Cir.1998). For purposes of § 523(a)(4), "embezzlement" is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. Id. To meet the definition of "embezzlement," there must be proof of the debtor's fraudulent intent in taking the property. Id. at 602-603. The Court finds that Cannon has failed to prove that debtors acted with fraudulent intent in coming into possession of the funds Cannon paid to Heritage Plumbing LLC. The Court concludes that Cannon has failed to prove a case under 11 U.S.C. § 523(a)(4) for embezzlement or larceny.

## VIII. WILLFUL AND MALICIOUS INJURY UNDER 11 U.S.C. § 523(a)(6)

Bankruptcy Code § 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
    . . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

11 U.S.C. § 523(a)(6).

Cannon asserts that debtors failed to pay suppliers with funds Cannon paid to debtors, and debtors thereby committed willful and malicious injury to Cannon's property. To be excepted from discharge under § 523(a)(6), a debt must arise from "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) ("The word "willful" in (a)(6) modifies the word "injury,"

indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.")  "[A]n injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." <u>Miller v. J.D. Abrams Inc. (In re Miller)</u>, 156 F.3d 598, 606 (5th Cir.1998). For a contractual debt to be excepted from discharge under § 523(a)(6), "explicit evidence [must show] that a debtor's breach was intended or substantially certain to cause the injury to the creditor." <u>In re Williams</u>, 337 F.3d 504, 511 (5th Cir. 2003). The Court finds that debtors did not commit an act giving rise to a deliberate or intentional injury.  Debtors' failure to pay a debt was not an act intended to cause injury to Ferguson or to Cannon.  The Court concludes that Cannon failed to prove a case under 11 U.S.C. § 523(a)(6).

IX. CONCLUSION

Based on the foregoing,

It is

**ORDERED** that Cannon Custom Homes, Inc. shall take nothing by reason of its claims; it is further

**ORDERED** that adversary proceeding number 08-3460 be closed.

Signed this 6th day of ___Jan___, 2011 at Houston, Texas.


KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE